# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:14-CR-51-TLS |
| | ) | |
| JAVON BURNETT | ) | |

## OPINION AND ORDER

On September 30, 2014, two officers from the Fort Wayne Police Department were patrolling in the southeast portion of Fort Wayne when they stopped a vehicle for traffic infractions and issued citations. During the stop, they noticed a handgun laying on the floor in front of the driver, Javon Burnett. On December 17, 2014, a grand jury indicted Burnett on one count of possession of firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On May 5, 2015, the Defendant filed a Motion to Suppress [ECF No. 19] the firearm, alleging that the police discovered it through an unreasonable search and seizure. Upon referral from this Court, Magistrate Judge Susan L. Collins held an evidentiary hearing on October 7, 2015, received post-hearing briefing, and issued a Report and Recommendation [ECF No. 40], recommending that the Court deny the Defendant's Motion to Suppress.

This matter is now before the Court on the Defendant's Objections to the Report and Recommendation [ECF No. 41], and the Government's Response [ECF No. 42].

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A)–(B), a magistrate judge does not have authority to issue a final order on a motion to suppress evidence in a criminal case. Instead, the magistrate judge submits proposed findings of fact and recommendations to the district court. If a party files a

timely objection to the magistrate judge's report and recommendation, § 636(b)(1) provides that

> the district judge is to make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which objection is
> made. The court may accept, reject, modify, in whole or in part, the findings or
> recommendations made by the magistrate judge. The judge also may receive
> further evidence or recommit the matter to the magistrate judge with instructions.

The Defendant's objection is to the Magistrate Judge's conclusion that the officers' testimony made it clear that they had witnessed the Defendant violate two traffic laws before stopping his vehicle, thus giving them probable cause to make the stop. De novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue. *See United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). Neither party has requested a hearing, and the Court finds that the record before the magistrate judge is sufficient to allow this Court to make a de novo determination.

## FACTS AND BACKGROUND

Officers Jason Fuhrman and Will Winston testified at the evidentiary hearing. The Magistrate Judge found their testimony to be entirely credible, and the Defendant's objections do not dispute this assessment or the Magistrate Judge's characterization of their testimony. Accordingly, this Court adopts the Magistrate Judge's findings of fact regarding the events of September 30, 2014, specifically those leading up to the traffic stop.

> Officer Fuhrman testified as follows: On September 30, 2014, he and his partner,
> Officer Winston, were patrolling the southeast portion of Fort Wayne on third
> shift. (DE 34, Transcript ("Tr.") 7-8). At around 11:16 p.m. that night, Officers
> Fuhrman and Winston were in the area of Pettit Avenue and Warsaw Avenue,
> which is a high crime area. (Tr. 8). The officers were sitting parked in their patrol
> car in the side parking lot of Yeoman's Auto service station, facing north toward
> Pettit Avenue. (Tr. 8). The officers observed a dark, blue-colored Chevy Malibu
> that was traveling eastbound on Pettit Avenue, which passed where the officers

> were sitting and "appeared to speed up as it was passing" the officers. (Tr. 9).
>
> About 12 seconds after the Malibu went by them, the officers started pulling out of the parking lot, when they saw the Malibu turn left onto Hanna Street "at a high rate of speed." (Tr. 9). While the officers did not know how fast the Malibu was going exactly, as they did not have radar, the Malibu "zipped around [the corner] pretty quick" without slowing down and stopping before turning. (Tr. 26). The officers then tried to catch up with the Malibu on Hanna Street, but they were unable to catch up with the Malibu until it had pulled over and stopped on another street, Sherwood Terrace. (Tr. 9-10). Officer Fuhrman reached speeds of 69 miles per hour and was still unable to catch up to the Malibu. (Tr. 29). The driver of the Malibu failed to properly signal the turn onto Sherwood Terrace from Hanna Street, as the driver signaled but "did not signal 200 feet prior to the turn like Indiana State law says he has to." (Tr. 10). The officers then pulled up behind the Malibu, activated the patrol car's lights, and proceeded to perform a traffic stop of the vehicle. (Tr. 10).

(Report and Recommendation 2–3.)

> When asked when he first intended to pull the Malibu over, Officer Fuhrman stated that he "intended to pull him over pretty close to when [he] left the parking lot," and that he was "going to follow [the Malibu] to see if [the driver] was still driving that way." (Tr. 46). Officer Fuhrman explained that he "was going to see how fast [the Malibu's driver] was driving. [Officer Fuhrman] didn't intend to pull [the Malibu] over until [the officers] turned the corner and [the Malibu] was already quite a ways down the street." (Tr. 47).

(*Id.* 4–5.)

> Officer Winston issued two citations to Burnett that night, and Officer Fuhrman also signed the citations. (Tr. 26, 29; Def.'s Ex. D). The first citation was for unreasonable speed under Ind. Code § 9-21-5-1. (Tr. 27). Officer Fuhrman explained that the basis of this citation was that the speed limit was 30 miles per hour, and the officers' patrol car was unable to catch up to the Malibu, despite reaching speeds of 69 miles per hour. (Tr. 27-29). Officer Fuhrman did not know the exact speed that Burnett was traveling, and he did not measure the distance traveled, and he did not attempt to time how long it took Burnett's vehicle to travel that distance. (Tr. 29-30). There was other traffic on Hanna Street at the time, and Officer Fuhrman found that Burnett was driving in a dangerous manner "[g]iven the nighttime and the lack of light, and the other vehicles." (Tr. 49). Additionally, Officer Fuhrman found that Burnett turned the corner from Pettit Avenue to Hanna Street at an "excessive" speed "for the corner," and in his opinion Burnett was driving at a speed that was unreasonable. (Tr. 49-50).

3

> The second citation was for failing to properly signal a turn, because "Indiana law requires that a turn be signaled at least 200 feet in advance of that turn." (Tr. 50). Officer Fuhrman explained that he saw the turn signal come on at the same time that the driver of the Malibu hit the brakes. (Tr. 50-51). While Officer Fuhrman never measured the distance from where the car was when the turn signal came on to the corner of Pettit Avenue and Sherwood Terrace, Officer Fuhrman stated that Burnett did not turn on his turn signal prior to 200 feet from the turn. (Tr. 54).

(*Id.* 5–6.)

> Officer Winston testified as follows: He was still in training as of September 30, 2014, when he and Officer Fuhrman conducted a traffic stop of Burnett's vehicle. (Tr. 68). Officer Winston had been riding along with Officer Fuhrman for the month of September. (Tr. 68). Officer Winston did not measure any distances in this case—he did not measure the distance from Yeoman's Service Center parking lot to the corner of Pettit Avenue and Hanna Street; he did not measure the distance from the corner of Pettit Avenue and Hanna Street to the corner of Hanna Street and Sherwood Terrace; and he did not measure the distance from where the Malibu was when its turn signal first activated to the point the Malibu turned onto Sherwood Terrace. (Tr. 69). Nevertheless, Officer Winston, when asked if he saw Burnett do anything unreasonable or imprudent while driving on Pettit Avenue, responded that the Malibu "appeared to be traveling noticeably above the speed limit" when it passed the officers. (Tr. 69). Officer Winston stated that the speed limit there was 30 miles per hour, although it could possibly be 35 miles per hour. (Tr. 69). Officer Winston did not use a radar gun. (Tr. 69-70). Officer Winston also did not measure the time that had elapsed from when he first saw Burnett's vehicle until it turned onto Hanna Street, and he could not accurately state what the vehicle's speed was. (Tr. 70). Officer Winston wrote the citations in this case. (Tr. 70). Officer Winston cited Burnett for traveling at an unsafe speed, not for traveling in excess of the posted speed limit. (Tr. 73).

(*Id.* 6–7.)

The remainder of the facts set forth in the Report and Recommendation pertain to what the officers did and observed after stopping the Malibu. The Defendant does not object to this portion of the Report, which the Court adopts in full.

**ANALYSIS**

The Supreme Court has held that the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Smith*, 668 F.3d 427, 430 (7th Cir. 2012) ("A traffic stop does not violate the Fourth Amendment when the police officer has probable cause to believe that a driver has committed [a traffic violation]."). Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). In other words, the circumstances must be "sufficient to warrant a man or woman of prudence to believe[] that a moving violation has occurred." *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997). "A stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006).

In Indiana, "[a] person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing." Ind. Code § 9-21-5-1. Based on their observations, Officers Fuhrman and Winston believed that the Defendant was traveling at an unsafe speed in violation of Indiana Code § 9-21-5-1. The Defendant argues that no reasonable person could determine the speed of the Defendant's vehicle based on testimony that included non-particularized words and phrases such as "basically," "zipped," "pretty quick," "didn't seem like," and "looked like," which are words Officer Fuhrman used to describe the manner in which the Defendant turned the corner after he passed Officer Fuhrman's location. The Magistrate Judge addressed these arguments in

the Recommendation, stating that the Defendant was placing too much emphasis on words used in normal speech, and that the officers' testimony made it clear that they had witnessed the Defendant drive at an unreasonable speed. This Court agrees. Officer Fuhrman used words that conveyed how things appeared to him, which is all he could do. He could not testify as to an exact speed, and such an expectation would be unrealistic.

Accordingly, it was proper for the Magistrate Judge to rely on Officer Fuhrman's testimony that the vehicle appeared to speed up and turned at a high rate of speed, and that they were unable to catch up despite reaching speeds of 69 miles per hour. It was also proper to cite Officer Fuhrman's testimony that the manner in which the Defendant was driving was dangerous "given the nighttime and the lack of light, and other vehicles," and that he took the turn at a speed that was excessive for the corner.

The Defendant objects to the Magistrate Judge's reliance on Officer Fuhrman's statement about the presence of other vehicles. He argues that the traffic was not heavy, as the in-car video showed only 5 cars during the nearly 2 minutes of video before they began to follow the Defendant. It shows only one car on Hanna, where the officers deemed the Defendant was driving in an unsafe manner for the conditions. Additionally, he argues that the Magistrate Judge failed to acknowledge the exact wording of Officer Fuhrman's testimony regarding the Defendant's driving around the corner and his admission that he did not know how fast the Defendant was going. The Defendant asserts that Officer Fuhrman's testimony that he had to go 69 miles per hour to catch up with the Defendant is meaningless because he never testified how far away the Defendant was when he reached this speed. The Court is not persuaded.

The officers were correct to believe that driving at a speed greater than is reasonable and

prudent under the conditions, having regard to the actual and potential hazards then existing, was a violation of Indiana traffic laws. The statute at issue does not require that a driver be exceeding a certain speed, or even that he exceed the posted speed limit. Thus, the fact that the officers could only "guess" at his speed does not mean that they could not find that his driving violated the Indiana statute. They reasonably thought, based on their observations of the Defendant's driving, including the fact that they pulled out to pursue him 12 seconds after seeing him turn the corner and could not catch up to him despite going speeds of 69 miles per hour in a residential area, that the Defendant was driving at a speed greater than was reasonable and prudent under the conditions. They believed that the Defendant's speed failed to take into account the actual and potential hazards that the lack of lighting and the existence of other traffic might pose. There is no support for the Defendant's implication that the traffic had to be heavy before it could be considered a potential hazard, especially in a residential area. Even if the officers were incorrect in their belief, "[w]hen an officer makes a stop based on a mistake of *fact*, we ask only whether the mistake was reasonable" in order to determine if there was probable cause for the stop. *McDonald*, 453 F.3d at 962. The Defendant's arguments about the limits of the officers' knowledge notwithstanding, their observations provided an objectively reasonable basis to believe that the Defendant violated an Indiana traffic law. *Cf. United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007) (noting that an officer's observations provided adequate basis for a stop and that "courts perforce rely on normal human observation of the natural world every day").

      The officers identified a second violation that preceded their stop: the Defendant's failure to properly signal his turn from Hanna Street to Sherwood Terrace. The Indiana Code requires

that "[a] signal of intention to turn right or left . . . be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." Ind. Code § 9-21-8-25. The Defendant objects to the Magistrate Judge's finding that Officer Fuhrman's testimony made clear that he witnessed the Defendant violate this statute, "as he testified that his patrol car was about 200 feet from the intersection at the time [the Defendant's] turn signal came on." (Report and Recommendation 12.) The Magistrate Judge also noted Officer Fuhrman's testimony that the Defendant did not signal until he was applying the brakes to make the turn. The Defendant's position is that the Magistrate Judge's reliance on Officer Fuhrman's testimony is unfounded because he only *guessed* he was 200 feet from the intersection, but he did not actually measure the distance. "Q. And do you know how far you are from the intersection of Sherwood and Hanna at this point, how many feet? A. I'm guessing I'm probably around 200 feet from the intersection right now." (Tr. at 33.) The Defendant does not address Officer Fuhrman's testimony that the brake lights and turn signal became visible to him simultaneously.

The Court finds that Officer Fuhrman's testimony regarding what he observed was sufficient to warrant a man of reasonable prudence to believe that the driver of the Malibu had violated Indiana's turn signal law. He was not required to know the precise distance that the Defendant was from the intersection when he used his turn signal, as long as he had reason to believe it was less than 200 feet in advance of the turn. Citizens who drive on Indiana roads do not actually measure this distance, but are expected to estimated the distance fairly accurately on a consistent basis. Officer Fuhrman's estimate of his own distance from the intersection when he observed the turn signal, as well as the fact that the turn signal was not activated until the Defendant began to brake for the turn, are sufficient to establish probable cause that the

8

Defendant was in violation of Indiana Code § 9-21-8-25.

For these reasons, the Court accepts the Magistrate Judge's conclusion that the officers had probable cause to believe that the Defendant had committed violations of Indiana traffic laws, and that there was no Fourth Amendment violation. As the Magistrate Judge noted, the Defendant did not pursue any claims in his post-hearing briefing that the search of the vehicle was a separate constitutional violation that would support suppression of the evidence. Accordingly, the Motion to Suppress is denied.

## CONCLUSION

For the reasons stated above, the Court ADOPTS the Report and Recommendation [ECF No. 40], and DENIES the Motion to Suppress [ECF No. 19]. A separate scheduling order will be issued.

SO ORDERED on March 23, 2016.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT